E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**20-A-07039-10**
10/21/2020 9:09 AM

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

*Richard T. Alexander*
CLERK OF SUPERIOR COURT

Julie Tuttle, Individually and on
behalf of The Estate of
Michael Paul Tuttle

PLAINTIFF

CIVIL ACTION
NUMBER:_____ **20-A-07039-10**

VS.

Dexcom, Inc

_____

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:** Dexcom, Inc. c/o Corporation Service Company,
40 Technology Parkway South, Norcross, Georgia 30092

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name
and address is:

Natalie Woodward
Snamp Jordan Woodward
1718 Peachtree Street, N.W.
Suite 600
Atlanta, GA 30309

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of
the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ **21** _____ day of _____ **OCTOBER** _____, 20____ **20**.

Richard T. Alexander, Jr.,
Clerk of Superior Court

By_____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

E-FILED IN OFFICE - NY
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**20-A-07039-10**
10/21/2020 9:09 AM

**General Civil and Domestic Relations Case Filing Information Form**

☒ Superior or ☐ State Court of _Gwinnett_ County

*CLERK OF SUPERIOR COURT*

| For Clerk Use Only | |
|---|---|
| | **20-A-07039-10** |
| **Date Filed** _____ | **Case Number** _____ |
| MM-DD-YYYY | |

**Plaintiff(s)**

_Tuttle, Julie, Individually and on_
_behalf of The Estate of Michael_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

_Paul Tuttle_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

_Dexcom, Inc._

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** _Natalie Woodward_   **Bar Number** _773897_   **Self-Represented** ☐

## Check One Case Type in One Box

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☒ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
**Case Number**       **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGI/
**20-A-07039-1(**
**10/21/2020 9:09 AN**

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

*CLERK OF SUPERIOR COUR*

| | | |
|---|---|---|
| JULIE TUTTLE, individually and on behalf of the ESTATE OF MICHAEL PAUL TUTTLE, | * * * | |
| Plaintiff, | * * | CIVIL ACTION FILE |
| v. | * * | NO. _____ |
| DEXCOM, INC., | * * | **20-A-07039-10** |
| Defendant. | * * | JURY TRIAL REQUESTED |
| | * | |

## COMPLAINT

COMES NOW Plaintiff Julie Tuttle, individually and as the legal next-of-kin of Michael

Paul Tuttle,[1] and files this Complaint against Defendant Dexcom, Inc., seeking damages for

Dexcom's strict liability and negligence in the failure of the glucose monitoring system that

resulted in the wrongful death of her husband, Michael Paul Tuttle, and shows the Court as

follows:

## PARTIES AND JURISDICTION

1.

Julie Tuttle is a citizen and resident of the State of Georgia. Plaintiff was the wife of

Michael Tuttle and is the legal next-of-kin. As such, she is the proper party to bring this action.

2.

Defendant Dexcom, Inc. is a Delaware Corporation with its principal place of business

located at 6340 Sequence Drive, San Diego, California, 92121. Defendant Dexcom may be

served with process by serving its registered agent Corporation Service Company at 40

---

[1] Plaintiff is in the process of filing for letters of administration and will amend her Complaint
after she receives them.

1

Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

3.

Venue and jurisdiction are proper in this Court.

## FACTS

4.

Dexcom designs, develops, manufactures, promotes, supplies, distributes, sells, and instructs in the use of the Dexcom G6 Continuous Glucose Monitoring System ("G6 System").

5.

The G6 System is intended for use by diabetics to replace fingerstick blood glucose testing for diabetes treatment decisions.

6.

Dexcom markets that the G6 System allows users to always know their glucose levels without fingersticks or calibration.

7.

Dexcom also markets that the G6 System aids users in the detection of hyperglycemia and hypoglycemia by alerting users to these events, facilitating both acute and long-term therapy adjustments. When working properly, these alerts engage three senses: sight, hearing, and touch.

8.

The G6 System has three key parts: 1) the sensor that collects glucose information, 2) the transmitter that sends the glucose information from the sensor to the display device, and 3) the display device that shows the glucose information to the user, as demonstrated in the G6 System User Guide:

| What you see | What it's called | What it does |
|---|---|---|
| Applicator<br>Sensor (inside) | Applicator with built-in sensor | Applicator helps you insert the sensor wire under your skin.<br><br>Sensor gets your glucose information. |
|  | Transmitter | Transmitter sends your glucose information from the sensor to the display device. |
|  | Display Device(s):<br>• Receiver<br>• Your smart device | Display device(s) shows your glucose information.<br><br>Receiver is required for Medicare. |

9.

Dexcom designs, develops, manufactures, promotes, supplies, distributes, sells, and instructs in the use of the senor for the G6 System.

10.

Dexcom designs, develops, manufactures, promotes, supplies, distributes, sells, and instructs in the use of the transmitter for the G6 System.

11.

Dexcom designs, develops, manufactures, promotes, supplies, distributes, sells, and instructs in the use of the Dexcom G6 application for iPhones ("G6 App").[2]  The G6 App allows

---

[2] See https://apps.apple.com/us/app/dexcom-g6/id1209262925.

the user to use their iPhone as the display device when using the G6 System.

12.

Dexcom provides a User Guide for the G6 System that is available at https://s3-us-west-2.amazonaws.com/dexcompdf/G6-CGM-Users-Guide.pdf. This is the same version of the User Guide available in May 2019.

13.

Failure to receive glucose information can result in injury or death of a diabetic.

14.

Failure to recognize an occurrence of hyperglycemia or hypoglycemia in a diabetic can result in injury or death.

15.

The G6 System is only available to users by prescription.

16.

According to the Manufacturer and User Facility Device Experience database ("MAUDE") run by the United States Food and Drug Administration ("FDA"), thousands of users have notified Dexcom that the alarms in its similar predecessor models, the G5 and G4 Platinum CGM, are unreliable and inadequate.

17.

In numerous cases, users have reported that the sensors, transmitters and/or display devices on the G6 System and its predecessors operates intermittently. Dexcom testing has in such cases proven inadequate to determine which G6 Systems suffer from intermittent operation.

18.

Numerous users have warned Dexcom that the G6 System and its predecessors will often not sound during severe hyperglycemic and hypoglycemic events.

19.

Numerous users have warned Dexcom that the G6 System's predecessors will test properly but then fail to sound when users are experiencing dangerously high or low glucose levels. The G6 is designed to (and marketed as having the ability to) self-test (self-calibrate), but users have warned Dexcom that the G6 System will fail to sound when users are actually experiencing dangerously high or low glucose levels after the self-calibration.

20.

Numerous users have died in their sleep while relying on the G6 System and its predecessors, the Dexcom G5 and G4 Platinum CGM's.

21.

On May 1, 2019, Michael Tuttle's doctor prescribed Michael the G6 System for the purpose of blood glucose testing, diabetes treatment decisions, and detecting episodes of hyperglycemia and hypoglycemia, facilitating both acute and long-term therapy adjustments.

22.

Prior to being prescribed the G6 System, Michael Tuttle had used prior versions of Dexcom's glucose monitoring systems.

23.

During the relevant time, Michael Tuttle used the G6 System for blood glucose testing and for diabetes treatment decisions.

5

24.

During the relevant time, Michael Tuttle used the G6 System to detect episodes of hyperglycemia and hypoglycemia, facilitating his acute and long-term therapy adjustments.

25.

During the relevant time, Michael Tuttle used the G6 App as the display device for the G6 System.

26.

During the relevant time, Michael Tuttle made no significant changes to the G6 System or G6 App.

27.

During the relevant time, Michael Tuttle treated occurrences of hypoglycemia by taking glucose pills, eating, or drinking to raise his blood sugar.

28.

On November 9, 2019, Michael Tuttle's G6 App stopped alerting him to hypoglycemia and/or stopped receiving glucose information from the G6 System.

29.

When Michael Tuttle's G6 App stopped alerting him to hypoglycemia and/or stopped receiving glucose information from the G6 System on November 9, 2019, Michael was using the G6 System as directed by Dexcom.

30.

In the hours after Michael Tuttle's G6 App stopped alerting him to hypoglycemia and/or stopped receiving glucose information from the G6 System, he had a severe occurrence of hypoglycemia (low blood sugar).

31.

Because the Dexcom G6 System failed to alert Michael Tuttle to his hypoglycemia, he did not treat the hypoglycemia.

32.

On the morning of November 10, 2019, Michael Tuttle's wife, Plaintiff Julie Tuttle, found Michael unresponsive and lying in bed.

33.

Julie Tuttle called 911, and Michael Tuttle was taken to Wellstar North Fulton Hospital for treatment.

34.

On November 19, 2019, Michael Tuttle died of anoxic brain injury and acute respiratory failure due to hypoglycemia.

35.

Also on November 19, 2019, Dexcom issued a recall of the same G6 App version used by Michael Tuttle because the G6 App version was not properly alerting users.

36.

During all relevant times, Michael Tuttle exercised ordinary care for his own safety, and had no opportunity to avoid the consequences of the Dexcom's negligence.

37.

During all relevant times, Michael Tuttle used the G6 System as directed.

## COUNT ONE – STRICT LIABILITY

38.

Plaintiff realleges and incorporates each and every prior allegation as if restated herein.

7

39.

Because Dexcom is a manufacturer, as defined by O.C.G.A. § 51-1-11, of the G6 System and G6 App, Dexcom is strictly liable for the injuries resulting from the failure of Michael Tuttle's G6 App to receive glucose information from the G6 System.

40.

The G6 System and G6 App were designed, developed, manufactured, tested, supplied, promoted, distributed and/or sold by Dexcom in a condition which was defective and unreasonably dangerous and which caused injuries to Michael Tuttle. Amongst other defects, the G6 App could stop alerting the user to hypoglycemia or stop receiving glucose information from the G6 System. Further, Dexcom did not sufficiently warn the user this could happen.

41.

The failure of the G6 App to alert Michael Tuttle to his hypoglycemia or to receive glucose information from the G6 System was the proximate cause of the damages suffered by Michael Tuttle. Dexcom is strictly liable for the damages incurred by Michael Tuttle as a result of the defective product.

## COUNT TWO – NEGLIGENCE

42.

Plaintiff realleges and incorporates each and every prior allegation as if restated herein.

43.

Dexcom negligently designed, developed, manufactured, promoted, supplied, distributed, sold, and instructed in the use of the G6 System so as to proximately cause the injuries to Michael Tuttle. The G6 App could stop alerting the user to hypoglycemia or stop receiving

glucose information from the G6 System. Further, Dexcom did not sufficiently warn the user this could happen.

44.

The negligence of Dexcom was the proximate cause of the damages alleged by Michael Tuttle. Plaintiff is entitled to recover damages, both actual and punitive, in an amount to be determined by the trier of fact.

## COUNT THREE – BREACH OF WARRANTY

45.

Plaintiff realleges and incorporates each and every prior allegation as if restated herein.

46.

In designing, developing, manufacturing, promoting, supplying, distributing, selling, and instructing in the use of the G6 System, Dexcom warranted that it would be free from defects in design, manufacture, material and workmanship, and further warranted that it was merchantable and reasonably fit and suitable for the purpose for which it was intended.

47.

At the time of making this warranty, Dexcom knew or should have known that the G6 System would be used by persons under similar circumstance to those circumstances of Michael Tuttle and that Michael Tuttle was therefore within the class of persons reasonably to be expected to be endangered by breach thereof.

48.

At all relevant times, the warranty was not true because the G6 System was not free from defect(s) in design and/or manufacture.

49.

As a direct and proximate result of the breach of warranty, Michael Tuttle suffered damages in such amount as the trier of fact may find.

50.

Pursuant to the doctrines of *respondeat superior,* agency and/or apparent agency, Dexcom is liable and responsible for all negligent acts and omissions of each of its actual and/or apparent agents and employees for the manufacturing, testing, promoting, selling and/or distributing of the G6 System to Michael Tuttle.

## <u>COUNT FOUR – PUNITIVE DAMAGES</u>

51.

Plaintiff realleges and incorporates each and every prior allegation as if restated herein.

52.

The actions of Dexcom showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences. See O.C.G.A. § 51-12-5.1.

WHEREFORE, Plaintiff prays judgment as follows:

1.  That Plaintiff recover for special damages including but not limited to medical expenses and funeral expenses in an amount to be proven at trial.

2.  That Plaintiff recover for Michael Tuttle's pain and suffering and general damages in an amount to be proven at trial;

3.  That Plaintiff recover punitive damages in an amount to be determined at trial;

4.  That Plaintiff recover the full value of the life of Michael Tuttle under the wrongful death statute;

5. That all costs of this suit be taxed against Defendant; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 21st day of October, 2020.

/s/ Natalie S. Woodward_____
NATALIE S. WOODWARD
Georgia Bar Number: 773827
**SHAMP JORDAN WOODWARD**                BRIAN H. CATHEY
1718 Peachtree Street, Suite 660         Georgia Bar Number: 483776
Atlanta, GA 30309                        *Attorneys for Plaintiff*
(404) 893-9400 (telephone)
(404) 260-4180 (facsimile)
woodward@sjwtriallaw.com
cathey@sjwtriallaw.com

E-FILED IN OFFICE - N\
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGI/
**20-A-07039-1(**
**10/21/2020 9:09 AN**

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

*CLERK OF SUPERIOR COUR*

| | | |
|---|---|---|
| JULIE TUTTLE, individually and on behalf of the ESTATE OF MICHAEL PAUL TUTTLE, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION FILE |
| v. | * | NO. ___ **20-A-07039-10** |
| | * | |
| DEXCOM, INC., | * | |
| | * | JURY TRIAL REQUESTED |
| Defendant. | * | |
| | * | |

## PLAINTIFF'S FIRST CONTINUING INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION TO DEXCOM, INC.

COMES NOW, Plaintiff Julie Tuttle, pursuant to O.C.G.A. §§ 9-11-26; 9-11-34; and 9-11-36; requests that Defendant (a) answer the forgoing interrogatories separately, fully, in writing, and under oath and to serve a copy of Defendant's verified answers upon counsel for Plaintiff within 45 days of service; and (b) produce for inspection and copying at the office of Plaintiff's counsel, Shamp Jordan Woodward, 1718 Peachtree Street, Suite 660, Atlanta, Georgia, 30309, within 45 days of service, the following items which are within its custody, control, or possession:

## INSTRUCTIONS

A.      You are required to provide all information that is available to you or in your custody and control, including information in the possession of your present and former attorneys, accountants, representatives, agents, or other persons acting on your behalf.

B.      With respect to the request for documents, they are addressed to Defendant Dexcom, Inc., ("Dexcom"), its agents, consultants, investigators or attorneys, or any of them.  If the requested documents are known by this Defendant to exist but are not in the possession or control of this Defendant, its agents, consultants, investigators, attorneys, or any of them, it is

requested that this Defendant so indicate or produce such documents that show the name of the person or entity who has custody of such documents.

C.      If you decline to produce any requested information on the grounds of attorney-client privilege, work product doctrine or any other privilege, then please provide a privilege log as required by Uniform Superior Court Rule 5.5.

D.      The words "and" and "or" shall, unless the context clearly indicates otherwise, embrace both the conjunctive and disjunctive so that the maximum amount of information should be understood as requested.

E.      Importantly, citing generally to charts or records will not be an adequate response. Please produce and identify the specific pages that are responsive to each request as required by the Civil Practice Act.

F.      If any documents responsive to any request have been lost, mutilated or destroyed, so state and identify each such document, so state in response to which request(s) the document would have been responsive.

G.      If there are no documents in your possession, custody, or control which are responsive to a particular request, so state in response to each request.

## DEFINITIONS

A.      "You," "Your" or "Defendant" shall refer to Dexcom, Inc., Defendant's counsel and any consultants, experts, investigators, agents or other persons acting on his/her/its behalf.

B.      "Defendant" shall mean Dexcom, Inc.

C.      To "identify" or "state the identity of" a person or entity, state with respect to each such person the following information:

2

1.     His, her, or its full name, present or last known residence or business address, and present or last known residence and business telephone number.

2.     His, her, or its last known employer and job title, if applicable, or if self-employed, a statement of this fact and a name or address under which he, she, or it does business.

D.     "Person" shall mean and include a natural person, individual, partnership, firm, corporation or any kind of business or legal entity, its current and former agents, and employees.

E.     When referring to a document, "identify" means that you shall set forth the general nature of the document, the author or the originator, each addressee, all individuals designated on the document to receive a copy or who prior hereto have received a copy, date, title and general subject matter, the present custodian of each copy thereof, last known address of each such custodian, and the bates number, if any, affixed thereto.

F.     The term "document" as used herein includes things (e.g., tape recordings, computer disks) and means all documents and things subject to production under O.C.G.A. §§ 9-11-26 and 9-11-34 and thus includes, by way of illustration only and not by way of limitation, the following, whether electronically stored, printed or reproduced by any process, or written, and/or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely: notes; correspondence; communications of any nature; telegrams; facsimile transmissions; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; calendars; desk pads; appointment books; routing slips or memoranda; reports; publications; computer readable disks, tapes or other records; photographs; meeting minutes or records; transcripts of oral testimony or statements; reports and/or summaries

3

of interviews; reports and/or summaries of investigations; agreements and contracts, including all modifications and/or revisions thereof; court papers; canceled or un-canceled checks; brochures; pamphlets; press releases; drafts of, revisions of drafts of, or translations of any document; tape recordings; records; and dictation belts.  Any document with any marks on any sheet or side, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or notation of any character and not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of this request.

I.    "Relevant time period" shall mean the period of time when Michael Tuttle began using his Dexcom G6 System until his death on November 19, 2019.

## **INTERROGATORIES**

1.

Please give a detailed factual basis for any affirmative defense you raise or anticipate raising in this lawsuit, identify all persons with knowledge relevant to that defense, and identify all documents that support that defense.

2.

Identify all lawsuits, legal proceedings, FDA investigations and/or inspections, or other legal actions in which you have been named a party in the past 10 years.

3.

Please identify all procedures, rules, guidelines and/or policies, whether written or otherwise, that apply to your role or responsibilities in the designing, manufacturing, promoting, distributing, supplying and/or selling of the Dexcom G6 Continuous Glucose Monitoring System ("G6 System"), including the Dexcom G6 iPhone application ("G6 App"), identifying as to each

4

all persons with responsibility for enforcing the procedure, rule, guideline and/or policy and all documents that refer to, evidence or reflect its content and application.

4.

Identify all policies of insurance, including but not limited, to professional liability and umbrella insurance, which do or may provide coverage for claims asserted in Plaintiff's Complaint, and for each such policy please state:

a.      the named insured on each such policy;

b.      the policy number of each such policy;

c.      the name of each insurance company which issued a policy;

d.      the limits of liability and the types of coverages provided under each applicable liability policy; and

e.      whether any reservation of rights or denial of coverage has been made.

5.

Please state the names, addresses, home telephone numbers, places of employment, job titles or capacities, and present whereabouts of all persons that to your knowledge, information, or belief:

a.      Designed, manufactured, tested, supplied, promoted, distributed and/or sold the G6 System as used by Michael Tuttle.

b.      Have investigated any aspect of the risks associated with the use of the G6 System.

c.      Have knowledge of the facts or circumstances surrounding the events or allegations set forth in the Complaint.

6.

Describe in detail all communications, verbal or written, between Michael Tuttle, or any member of Michael Tuttle's family with Defendant, or any person employed by, affiliated with, or acting on behalf of Defendant that are not documented in any of the medical records. As to each such communication, state when and how (by email, telephone, video conferencing or in person) it occurred, and identify each person who participated in or was present during the communication.

7.

Identify any document, record, report or correspondence in your possession, custody or control, regardless of the nature or source thereof other than the patient's medical chart, which in any way mentions or refers to Michael Tuttle, including but not limited to any medical charts, memoranda, correspondence, emails, phone logs, test results, imaging studies, chat logs, video conferencing records, telemetry, communications with remote providers, or any other record, report or document. This Interrogatory does not seek identification of any attorney-client communications.

8.

If you, or anyone acting on your behalf, or your insurer, or anyone acting on behalf of your insurer, have obtained from any person any statement (written, recorded, or oral) concerning any aspect of this litigation, or its subject matter, please identify each such statement by stating the name of the person giving the statement, the name of the person taking the statement, the date of the statement, and the present custodian of the statement.

9.

Please identify all persons whom you expect to call or may call as an expert witness at trial. This includes any of Michael Tuttle's treating physicians from whom you may elicit standard of care or causation testimony at trial. With respect to each such person, please state:

a.    the specific subject matter on which you expect such expert to testify;

b.    the substance of the facts, opinions and conclusions to which you expect such expert to testify;

c.    a summary of the factual grounds for each such opinion or conclusion;

d.    whether any such person has prepared or provided you with a written or recorded statement or report concerning their investigation and, if so, the names and addresses of all persons who have a copy of each such statement or report.

10.

With regard to each expert referred to in your responses to the foregoing Interrogatory, list each document or tangible thing which you have furnished to such expert to review or consider.

11.

Please provide information regarding any other complaints regarding the failure of the G6 System's to detect, transmit, or display glucose information.

12.

Do you contend that some other person or legal entity is in whole or in part at fault for causing the injuries Plaintiff has alleged in this matter? If so, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such contention.

7

Please note that a reference to the documents or records alone will be considered an insufficient response to this Interrogatory.

13.

For all persons or entities identified in response to the prior Interrogatory, identify any documents evidencing, reflecting, or regarding your contention that these persons(s) or entities are at fault for Michael Tuttle's injuries and subsequent death.

14.

If you contend that Michael and/or Julie Tuttle were negligent or that their actions or inactions resulted in or contributed to Michael's injury and subsequent death, please state and identify any facts which support such contentions.

15.

Identify all documents reviewed by anyone responding to any of the foregoing Interrogatories concerning Michael or Julie Tuttle and/or the cause(s) of Michael Tuttle's injuries.

16.

Identify each person, other than your counsel, who participated in the preparation of your responses to these Interrogatories and each person from whom information was obtained in connection with such responses.

17.

Please describe with reasonable particularity any warning or instruction regarding the G6 System which Defendant contends is relevant to the allegations set forth in Plaintiff's complaint.

18.

Please describe with reasonable particularity the testing conducted by or on behalf of Defendant to determine whether the G6 System was safe for use.

19.

Please describe with reasonable particularity any warnings or instructions that were provided to purchasers of the G6 System regarding the risk the G6 System would fail to detect, transmit, or display glucose information.

20.

Please describe with reasonable particularity the studies, testing, or precautions that were taken by or on behalf of Defendant to determine the risk the G6 System would fail to detect, transmit, or display glucose information.

21.

Identify everything You did to ensure that the G6 System and the G6 App complied with the requirements of the related FDA approvals obtained by You.

22.

Identify every action You took to notify patients and/or healthcare providers of the recall and underlying reliability issues that were the basis of the recall of the G6 System.

23.

Describe in detail Your policies and procedures for complying with the FDA's Medical Device Reporting requirements for the G6 System and the G6 App.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

Please produce copies of any complaints in any lawsuits which have been filed against you.

2.

Please produce each and every policy of liability insurance, professional liability insurance, malpractice insurance, indemnification and/or casualty insurance policy or agreement, including all primary or basic as well as excess or umbrella coverage, and the declarations sheets for same, which may, could or do provide insurance coverage or indemnification for any of the claims made by the Plaintiff in this lawsuit.

3.

Please produce all procedures, rules, guidelines and/or policies, whether written or otherwise, that apply to your role or responsibilities in the designing, manufacturing, promoting, distributing, supplying and/or selling of the G6 System.

4.

Please produce any photographs, videotapes, or audio recordings of Michael Tuttle or any person, place, or thing involved in the subject matter of this lawsuit, including, but not limited to, any and all audio or video recordings between any member of Michael Tuttle's family or and Defendant or anyone employed by, affiliated in any way with, or acting on behalf of Defendant, which have taken place during the relevant time period.

5.

Please produce any and all documents, which evidence or reflect any communications, verbal or written, between Michael Tuttle, and/or any member of his family and Defendant or

10

anyone employed by, affiliated in any way with, or acting on behalf of Defendant, which have taken place during the relevant time period. This request includes but is not limited to correspondence, emails, telephone records or notes, phone logs, chat logs or any other document, paper or electronic, or other.

6.

Please produce a full and complete copy of all medical records in your possession regarding Michael Tuttle, including but not limited to, lab reports, imaging studies, chart notes, telemetry, chat logs, prescription records, intake forms and any other medical record in you or your attorney's possession which pertains to Michael Tuttle.

7.

Please produce a full and complete copy of all documents contained in your file and/or chart maintained for Michael Tuttle, including forms, correspondence, telephone records, email records, prescription records, insurance records or any other document concerning or referring to Michael Tuttle.

8.

Please produce all documents, not produced in response to the above requests, in your possession, custody or control, which relates to or refers to Michael or Julie Tuttle, including but not limited to, any correspondence with other medical providers, memoranda, research, emails, letters, forms, test results, notes, or any other document of any type which refers to or relates to Michael and/or Julie Tuttle.

9.

Please produce a copy of any and all billing records regarding Michael Tuttle.

11

10.

Please produce a copy of your expert(s)' curricula vitae, and all correspondence and materials provided to or exchanged between you or your counsel and your expert(s), which pertains to Michael Tuttle or the subject matter of this lawsuit, including but not limited to any report or analysis or document containing opinions and or conclusions by any expert witness whom you have retained to give testimony in this matter. This request is limited to experts that you may or expect to testify at the trial of this matter.

11.

Please produce any and all documents, which evidence, regard, or reflect any investigation regarding Michael Tuttle and/or the subject matter of this lawsuit.

12.

Please produce a copy of each and every e-mail exchanged by you, your employees and/or agents (not including any communication with your attorney), that references or relates to, in any fashion, Michael Tuttle and any member of Michael Tuttle's family, and or the subject matter of this lawsuit.

13.

Please produce all documents received in response to any Non-Party Request for Production of Documents served by you.

14.

Please produce all documents identified by you in response to Plaintiff's First Interrogatories.

15.

Please produce all documents evidencing any warning or instruction regarding the G6 System which Defendant contends is relevant to the allegations set forth in Plaintiff's complaint.

16.

Please produce all documents evidencing the testing conducted by or on behalf of Defendant to determine whether the G6 System was safe for use.

17.

Please produce all documents evidencing any warnings or instructions that were provided to purchasers of the G6 System regarding the risk the G6 System would fail to detect, transmit, or display glucose information.

18.

Please produce all documents evidencing the studies, testing, or precautions that were taken by or on behalf of Defendant to determine the risk the G6 System would fail to detect, transmit, or display glucose information.

24.

Produce copies of all packaging, labeling, advertising, or any other promotional materials concerning the G6 System and the G6 App.

25.

Produce all documents concerning Your policies, procedures, guidelines and training provided to doctors, nurses, and any other health providers concerning the G6 System and the G6 App.

13

26.

Produce all documents concerning Your policies, procedures, guidelines and training provided to patients concerning the G6 System and the G6 App.

27.

Produce all documents concerning communications with the United States Food and Drug Administration, or any other state, federal, or international agency, concerning the G6 System and the G6 App, or concerning any of the Plaintiffs in this case, or the events in the Complaint.

28.

Produce all internal or external documents or communications that contain, record, reflect or otherwise concern Your application for FDA approval, including Your development, testing, design and labeling of the G6 System and the G6 App.

29.

Produce all documents concerning reported or suspected problems with the G6 System and the G6 App, including but not limited to all communications, investigations, testing, Medical Device Reporting to the FDA, and alerts or warnings provided to patients and/or healthcare providers.

30.

Produce all documents concerning Your development, maintenance, and implementation of written Medical Device Reporting procedures.

31.

Produce all documents concerning any and all product recalls involving the G6 System and the G6 App.

14

32.

Produce all documents concerning steps taken to notify medical providers and users of any problems with the audio and alarms of any G6 System and the G6 App or of any recall of the G6 System and the G6 App.

33.

Produce all photographs, videos, and audio recordings concerning any training, advertising, warnings, testing or investigation of the G6 System and the G6 App.

34.

Produce all marketing materials concerning the G6 System and the G6 App.

35.

Produce a copy of all documents concerning rebates, incentives, samples, or other inducements provided to any healthcare provider to prescribe the G6 System and the G6 App.

19.

Pursuant to Uniform Superior Court Rule 5.5, please provide the following for each document that is responsive to the foregoing requests for production but is not being produced to Plaintiff on grounds that it is privileged or otherwise protected:

a. Date of document;

b. Type of document;

c. Author of document;

d. Recipient of document; and

e. Grounds for not producing the document to Plaintiff

Respectfully submitted this 21st day of October, 2020.

SHAMP JORDAN WOODWARD,


/s/ Natalie S. Woodward_____
NATALIE S. WOODWARD
Georgia Bar Number: 773827
BRIAN H. CATHEY
Georgia Bar Number: 483776
*Attorneys for Plaintiff*

**SHAMP JORDAN WOODWARD**
1718 Peachtree Street, Suite 660
Atlanta, GA 30309
(404) 893-9400 (telephone)
(404) 260-4180 (facsimile)
woodward@sjwtriallaw.com
cathey@sjwtriallaw.com

16

SHERIFF'S ENTRY OF SERVICE

Civil Action No. 20-A-07039-10

| | Superior Court ☒ | Magistrate Court ☐ |
|---|---|---|
| | State Court ☐ | Probate Court ☐ |
| | Juvenile Court ☐ | |

Date Filed 10/21/20

Georgia, Gwinnett COUNTY

Attorney's Address

Natalie Woodward

1718 Peachtree Street, N.W., Suite 660

Atlanta, GA 30309

Julie Tuttle, individually and on behalf o
The Estate of Michael Paul Tuttle
_____ Plaintiff

VS.

Name and Address of Party to Served

Dexcom, Inc. c/o Corporation Service Company

40 Technology Parkway South

Norcross, GA 30092

Dexcom, Inc.

_____ Defendant

_____ Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

I have this day served the defendant _____ personally with a copy
of the within action and summons.

☐

**NOTORIOUS**

I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place abode in this County.

☐

Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**

Served the defendant Dexcom Inc. _____ a corporation

☒

by leaving a copy of the within action and summons with Ousha Smith _____
In charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice
to the defendant(s) to answer said summons at the place stated in the summons.

☐

**NON EST**

Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

☐

This _____ day of _____, 20 _____.

_____
DEPUTY